DIAMONDA TOBIAS, Plaintiff-Appellant, v. LEE F. WINKLER *et al.*, Defendants-Appellees.

Fourth District   No. 4—86—0715

Opinion filed June 2, 1987.—Rehearing denied July 24, 1987.

Nolan Lipsky, of Petersburg, for appellant.

Richard J. Wilderson and Nancy E. Martin, both of Graham & Graham, of Springfield, for appellee St. John's Hospital.

Heyl, Royster, Voelker & Allen, of Springfield (Gary L. Borah and Adrian E. Harless, of counsel), for appellee Lee F. Winkler.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

This action was brought to recover damages occasioned by the alleged negligence of both defendants in failing to inform plaintiff of the foreseeable risks and dangers associated with a surgical procedure known as gomez-type gastroplasty. The action was also brought against defendant Winkler to recover damages occasioned by his alleged intentional infliction of emotional distress upon plaintiff in failing to perform a reversal of the aforesaid surgical procedure, as he had allegedly agreed to do. The trial court, upon defendants' motions for summary judgment, entered judgment in favor of defendants and against plaintiff. Plaintiff appeals from the summary judgment.

Plaintiff first met with defendant Winkler in January 1982. At that time, she was suffering from obesity, which was aggravating an asthmatic condition. Subsequently, plaintiff was admitted to defendant St. John's Hospital, and on January 22, 1982, defendant Winkler performed a surgical procedure known as gomez-type gastroplasty upon plaintiff. Plaintiff alleges that the only side effect or complication discussed with her prior to the surgery was the fact that she would have to eat smaller meals on a permanent basis. Plaintiff also alleges that immediately following the surgery, she began to experience continual pain, nausea, and vomiting, as well as other complications associated with the surgery, and that if she had been informed that any of these

were potential risks associated with the surgery, she would not have consented to the procedure.

Plaintiff was discharged from the hospital on February 1, 1982; however, she was readmitted on February 16, 1982, because of nausea and vomiting. Subsequently, a second surgical procedure was performed to dilate the opening of the gastroplasty. Plaintiff was discharged for the second time on March 2, 1982.

After the second operation, plaintiff was able to tolerate liquids; however, she still was unable to eat. She was on chicken broth at the time of the second discharge, and was sometimes able to keep it down. Plaintiff continued to experience vomiting while in the hospital in February and March. Upon her second discharge she was still on a liquid diet with continued vomiting.

While at home, plaintiff was unable to keep liquids down and she continued to experience nausea and vomiting. On March 10, 1982, plaintiff was again rehospitalized.

In June 1982, plaintiff was readmitted to the hospital because of further problems with her gastroplasty. At this time, plaintiff alleges that she requested Winkler to "reverse" the gastroplasty procedure and that Winkler held himself out to be qualified to reverse the procedure. Plaintiff further alleged the following in count III of her complaint:

"5. That on or about June 4, 1982, Defendant Lee F. Winkler performed a surgical procedure upon Plaintiff which did not result in the reversal of the aforesaid gomez-type gastroplasty.

6. That the surgical procedure *** merely revised the previously performed gomez-type gastroplasty by dilating the existing gastroplasty channel to a larger opening.
***

8. That Lee F. Winkler knew, or should have known, considering the mental state of Plaintiff prior to her admission into the aforesaid hospital on or about June 1, 1982, that his failure to reverse the gomez-type gastroplasty would cause severe shock, emotional distress and mental anguish upon Plaintiff.

9. That as a result of Defendant Lee F. Winkler's failure to perform a reversal of the gomez-type gastroplasty procedure upon Plaintiff, Plaintiff did suffer severe shock, emotional distress and mental anguish and still continues to suffer the same.

10. That as a direct and proximate result of Defendant's intentional failure to perform a reversal of the gomez-type gastroplasty surgical procedure, but merely to revise the same, Plaintiff was caused to suffer severe shock, emotional distress

and mental anguish."

Plaintiff signed consent forms prior to each of the aforementioned surgeries.

Plaintiff filed her complaint on March 6, 1984. Thereafter, plaintiff filed her first-amended complaint on October 8, 1985. Count I of the first-amended complaint alleged that Winkler had a duty to inform her of foreseeable risks associated with the surgery performed upon her, that Winkler negligently failed to so inform her, and that if she had been informed of the foreseeable risks, she would not have consented to the surgery. Count II of the first-amended complaint alleged a similar duty to inform and a similar breach on the part of defendant hospital. Count III alleged a cause of action against Winkler for intentional infliction of emotional distress for failure to reverse the gastroplasty procedure.

Defendant St. John's Hospital moved for summary judgment on the basis that there was no duty upon the hospital to require defendant Winkler to advise patients of the foreseeable risks and dangers associated with the gastroplasty. Furthermore, the motion alleged that defendant Winkler did advise plaintiff of certain risks of the surgery and that the hospital could not supersede his decision with respect to the admonishments given. Finally the hospital contended that the cause of action is barred by the statute of limitations. Ill. Rev. Stat. 1983, ch. 110, par. 13—212.

Defendant Winkler filed a motion for summary judgment, stating, in pertinent part:

"1. That Count I of the Plaintiff's First Amended Complaint is barred by Ch. 110, Section 13—212 of the Illinois Code of Civil Procedure in that the Plaintiff failed to file her Complaint within two years of the date she knew or through the use of reasonable diligence should have known of the existence of her injury.

2. That judgment should be entered in favor of this Defendant and against the Plaintiff in Count III of the First Amended Complaint because there is no genuine issue as to any material fact in that the Plaintiff cannot establish the elements required to state a cause of action for the intentional infliction of emotional distress."

Defendant Winkler's motion was accompanied only by the discovery deposition of plaintiff.

The trial court, by a one-sentence docket entry, entered summary judgment against plaintiff and for defendants on all three counts of plaintiff's complaint.

■ Count I and count II of plaintiff's complaint are premised on the theory of informed consent. Count I is directed at defendant Winkler, and count II is directed at defendant St. John's Hospital. The doctrine of informed consent creates a cause of action in professional negligence against a physician when a plaintiff establishes that despite flawless treatment, there is an injurious effect or bad result, that the physician failed to warn the patient of that possibility when securing the patient's consent to the procedure and, as a result, the plaintiff consents to the procedure and suffers complications. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 452 N.E.2d 751.) This doctrine has been expanded under limited circumstances so that a hospital may have a duty to its patients to require physicians who use its facilities to advise their patients of risks associated with a particular procedure that is to be performed. (*Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319.) All parties agree that actions for informed consent arise out of patient care and consequently are governed by section 13—212 of the Illinois Code of Civil Procedure (Code), which provides, in pertinent part:

"No action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, ***." Ill. Rev. Stat. 1983, ch. 110, par. 13—212.

■ Plaintiff argues that summary judgment was improperly granted on the two counts which alleged a failure of defendants to warn her of possible risks because there was a genuine issue as to a material fact in that the date of discovery of the alleged injury was in dispute. Pursuant to section 2—1005(c) of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c)), summary judgment shall be rendered only if the pleadings and depositions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ Neither party has cited a case which involves the application of the "discovery rule" to an "informéd consent" situation, and our research has not disclosed any such cases. We believe that the relevant date for the running of the statute of limitations in a case alleging failure to disclose foreseeable risks of surgery is the date on

which the patient experiences side effects or problems following a medical procedure which a reasonable person would attribute to the surgery and of which the doctor did not warn or inform the patient. Pursuant to this statement, the issue thus becomes whether or not a material issue of fact exists regarding whether or not plaintiff knew or through reasonable diligence should have known that she was experiencing complications associated with her surgery which she was not advised of prior to the surgery more than two years prior to the date she filed her complaint.

■ Where it is apparent from the undisputed facts that only one conclusion can be drawn, summary judgment is proper on the question of the statute of limitations. (*Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869; *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.) However, where reasonable persons may fairly draw differing inferences from the facts which are not in dispute, the court must deny the motion. *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 472 N.E.2d 822.

Plaintiff argues that the first time she could be chargeable with knowledge that nausea and vomiting were symptoms or consequences of the gastroplasty is subsequent to March 10, 1982, and prior to her hospitalization in June 1982. During this time frame plaintiff continued to experience nausea and vomiting, and she continued to see defendant Winkler in his office because of the nausea. Plaintiff advised the defendant that she could not "live this way," because of the nausea. Plaintiff and Winkler conversed about a reversal of the surgery during this final period before her June admission. Plaintiff testified that she was under the impression after consulting with defendant Winkler that if the tubing utilized in the procedure were removed and the procedure reversed she would no longer be bothered by the nausea and vomiting. Winkler drew a picture for plaintiff and explained the reversal procedure. Plaintiff alleges that the discussions of the reversal of the procedure were the first event which gave her knowledge of her potential informed consent cause of action such as to trigger the running of the statute of limitations. Plaintiff further testified that throughout the course of treatment defendant Winkler reassured her that she was not in any difficulty. He allegedly told her she was doing well upon her first hospital discharge in February 1982. Plaintiff also testified that when she returned to the hospital in February, X rays were taken, and defendant Winkler never indicated to her that anything was wrong. He merely told her that her barium was going slowly and he wanted to watch her. When plaintiff was discharged from the hospital on March 2, 1982, she was on liquids and

was anxious to go home. This was an improvement in her condition. Plaintiff argues that this improvement could reasonably be associated with the second surgery performed upon plaintiff inasmuch as she could conclude that she could not keep food down because the gastroplasty opening was too small. Prior to surgery defendant Winkler advised plaintiff she would be able to tolerate a liquid diet and then slowly build herself up to small amounts of solid food. Plaintiff contends that at the time of her discharge on March 10, 1982, she was experiencing exactly what the doctor said she would, and therefore, she had no reason to believe that she was suffering from a permanent condition that was a result of the surgery and which she was not informed of.

As the supreme court stated in *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81, "[a]t some point the injured person became possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." However, as the court stated in *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 714, 375 N.E.2d 934, 940:

> "[I]n any given case, as with this case, whether plaintiff knew or should have known that a condition was the result of the possibly negligent act of another is a question of fact."

As the court stated in *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868-69:

> "The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them. *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156."

At least one court has considered the fact that a patient remained under the care of the physician who allegedly caused an injury as a factor in determining the time for the running of the statute of limitations in a medical malpractice action. In *Bebee v. Fields* (1979), 79 Ill. App. 3d 1009, 1013, 398 N.E.2d 1214, 1218, the court stated:

> "It would be reasonable for plaintiff, one unsophisticated in the field of medicine, to assume her condition was innocently as opposed to negligently caused as a result of this type of procedure. The fact that plaintiff remained under defendants' care after the injury first occurred and underwent two more similar procedures would seem to indicate a belief that this condition could be alleviated with further treatment. There is nothing in the pleadings to suggest that plaintiff should have reasonably

become aware at the time the first procedure was performed that her condition was negligently caused."

Furthermore, as the court stated in *Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 386, 430 N.E.2d 536, 539:

"Section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57(3)) provides that summary judgment is appropriate 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' For summary judgment to be granted, the right of the moving party must be clear, free from doubt, and determinable solely as a matter of law. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 388 N.E.2d 1054; *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 327 N.E.2d 236.) In making its ruling the trial court must construe the pleadings strictly against the moving party and in favor of the nonmoving party. *Harris Trust & Savings Bank v. Joanna-Western Mills Co.* (1977), 53 Ill. App. 3d 542, 368 N.E.2d 629; *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543.

Summary judgment is a drastic way to dispose of litigation (*Green v. McClelland* (1973), 10 Ill. App. 3d 350, 293 N.E.2d 629), and therefore should be awarded only with due caution. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.*; *Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357.) Where any doubt exists as to the right of the movant to summary judgment, *i.e.*, where fair-minded people could draw different inferences from the facts presented, the better judicial policy is to submit the issue to a trier of fact for resolution. *Harris Trust & Savings Bank v. Joanna-Western Mills Co.*; *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 365 N.E.2d 446."

■ Defendants chose to rely solely on plaintiff's deposition in support of their motions for summary judgment. Having read plaintiff's deposition in its entirety, and based solely on the information contained therein, we conclude that reasonable people could disagree regarding the issue of when plaintiff discovered, or should have discovered, the facts establishing the elements of her cause of action. (*Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 460, 304 N.E.2d 677, 680; *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934.) Consequently, we conclude that the trial court erred by granting summary judgment for defendants pursuant to section

13—212 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—212).

Defendant St. John's Hospital also argues that even if it had a duty to require physicians who use its facilities to advise their patients of risks of surgery, it discharged this duty by ascertaining that Winkler had talked to plaintiff, having Winkler sign the consent form stating that he had advised plaintiff of risks associated with the surgery, and by making sure that plaintiff signed the consent form. We agree with defendant St. John's Hospital's argument in this regard.

Defendant St. John's Hospital notes that plaintiff admitted in her deposition that Winkler did inform her of some risks of the surgery and argues that the exact information that must be disclosed is within the discretion of the physician, and for the hospital to become involved in the doctor's decision in this regard "would impinge upon the unique doctor-patient relationship, and could hinder the delivery of appropriate medical care." As the court stated in *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 768, 347 N.E.2d 320, 324:

"In our view, it would be too onerous a burden to place upon a physician the duty of disclosing every conceivable risk which possibly could develop. As the expert testimony revealed in the present case, excessive disclosure of remote risks would tend to do more harm than good to the patient. A doctor has a special relationship with his patient. [Citation.] This relationship not only vests the doctor with the responsibility of disclosure, but also requires the doctor to exercise discretion in prudently disclosing information in accordance with his patient's best interests. To disclose more than that which is material would run counter to the responsibility assumed through the doctor-patient relationship."

As the foregoing passage from *Miceikis* indicates, it is within the doctor's discretion to determine what to disclose to a patient in a particular situation. Although the court in *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319, indicated that there is a question of fact in cases such as this regarding whether or not a hospital has a duty to require a physician to inform his patient of certain potential risks associated with a particular procedure, this case creates no duty for the hospital to determine what information to give a patient and also creates no duty on the part of the hospital to actually inform the patient of any such risks. In the instant case, defendant St. John's Hospital provided consent forms and made certain that these forms were filled in. These consent forms contain affirmative statements by the physician that he has informed the patient of po-

tential risks, and the forms are also signed by plaintiff, acknowledging that she has been so informed. Under these circumstances, we conclude that defendant St. John's Hospital fulfilled any duty it may have had to require the physician to inform the patient of potential risks of surgery. (*Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320; *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319.) Consequently, we conclude that the trial court properly granted summary judgment for defendant St. John's Hospital on count II of the complaint.

■ Plaintiff next argues that the trial court improperly granted summary judgment for defendant Winkler on count III of her complaint, which alleged that Winkler committed the tort of intentional infliction of emotional distress. Count III of plaintiff's complaint specifically alleges that plaintiff entered the hospital on June 1, 1982, so that defendant Winkler could reverse the gomez-type gastroplasty previously performed on her, that Winkler did not reverse the gastroplasty but rather revised it, that defendant Winkler knew or should have known considering plaintiff's mental state that his failure to reverse the gastroplasty would cause emotional distress and anguish to plaintiff, and that plaintiff did suffer emotional distress and anguish.

The elements of the tort for intentional infliction of emotional distress are:

"(1) [E]xtreme and outrageous conduct, (2) intent by the defendant to cause, or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct." (*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 113, 371 N.E.2d 373, 375.)

(See also *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591.) Each of these elements must be present in order to maintain an action for intentional infliction of emotional distress.

The crux of plaintiff's complaint is that she requested Winkler to "reverse" the gastroplasty and return her to a "normal" condition, Winkler agreed to do so, and subsequently, Winkler knowingly performed a surgical procedure on her which did not constitute a reversal of the procedure. Plaintiff contends that this alleged conduct constitutes outrageous behavior amounting to intentional infliction of emotional distress. Plaintiff further contends that the trial court improperly dismissed count III of her complaint because a material question of fact existed regarding whether or not the gastroplasty had been reversed as Winkler allegedly agreed to do.

The only document filed in support of Winkler's motion for summary judgment was plaintiff's discovery deposition. Winkler contends in his brief that plaintiff was confused regarding the meaning of the terms "reversal" and "revision" and that he performed the procedure he agreed to perform. Winkler further contends that these facts are obvious from a reading of plaintiff's deposition.

Winkler chose to rely solely upon plaintiff's deposition as support for his motion for summary judgment. Although plaintiff's deposition is confusing regarding what was agreed to by Winkler and plaintiff and what actually occurred during the June 1982 surgery, we do not believe that it is indisputable or obvious, based solely upon plaintiff's deposition testimony, that Winkler actually performed the surgery he agreed to perform. In other words, it appears that a question of material fact remains as to whether or not Winkler performed the surgery he agreed to perform.

In addition to the threshold issue of whether or not Winkler intentionally failed to do what he agreed to do, additional questions arise regarding whether or not this conduct constitutes intentional infliction of emotional distress. From our review of the reported cases in this area, it appears that the tort of intentional infliction of emotional distress has been construed very narrowly, and it is a very difficult tort to prove. However, as the court stated in *Farnor v. Irmco Corp.* (1979), 73 Ill. App. 3d 851, 392 N.E.2d 591, whether certain conduct can be characterized as extreme and outrageous so as to support a cause of action for the tort of intentional infliction of emotional distress necessarily depends on the facts of each case. Thus, the issue of whether each of the aforementioned elements of the tort of intentional infliction of emotional distress have been established raises additional questions of material fact which cannot be resolved by reference to the record which is now before this court. We therefore conclude that the trial court erred by granting summary judgment for defendant Winkler on count III of the complaint due to the fact that several questions of material fact remain which cannot be resolved based on the record in this case.

In summary, we have concluded that the trial court properly granted summary judgment on count II of the complaint because the hospital discharged any duty it owed plaintiff regarding informed consent; however, the trial court erred by dismissing count I of the complaint because a question of material fact remains regarding the appropriate date for the application of the discovery rule and no other valid defense is available to defendant Winkler on this count. The trial court also erred by dismissing count III of the complaint because ma-

terial questions of fact remain regarding the events which occurred and also regarding whether this conduct on the part of defendant Winkler constituted intentional infliction of emotional distress.

For the foregoing reasons, the summary judgment order is hereby affirmed in part, reversed in part, and remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part, and remanded.

LUND and KNECHT, JJ., concur.