THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant, v. MICHAEL D. VAN MATRE, Defendant-Appellee.

Fifth District    No. 5—85—0767

Opinion filed July 9, 1987.—Rehearing denied August 18, 1987.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Michael P. Mullen and Francis M. Pawlak, of counsel), for appellant.

Q. Anthony Siemer, of Parker, Siemer, Austin, Resch & Resch, of Effingham, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Prudential Insurance Company of America (Prudential), filed an action in the circuit court of Effingham County seeking damages and an injunction to prevent defendant, Michael D. Van Matre, one of its former agents, from inducing Prudential whole-life insurance policyholders to terminate policies which Van Matre had sold or serviced while in Prudential's employ and to replace them with whole-life policies of a different company. Prudential's complaint contained three counts. Count I alleged tortious interference with contract, count II alleged breach of an implied covenant of good faith and fair dealing, and count III alleged breach of fiduciary duty. On Van Matre's motion, the circuit court dismissed all three counts pursuant to section 2—615 of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) as being substantially insufficient in law. Although the circuit court granted Prudential leave to file an amended complaint, Prudential elected to stand on its original pleadings. This appeal followed. We affirm.

A motion to dismiss a complaint pursuant to section 2—615 (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) requires the appellate court, as well as the trial court, to accept all facts well pleaded as true and to draw all reasonable inferences therefrom in favor of the plaintiff. (*Towne v. Cole* (1985), 133 Ill. App. 3d 380, 382, 478 N.E.2d 895, 897.) Prudential, the plaintiff in this case, alleged that on or about April 7, 1975, Van Matre entered into an "Agent's Agreement" with it. According to the agreement, which was attached as an exhibit to plaintiff's complaint, Van Matre was obligated to "promote the success and welfare of [Prudential]; conform to and abide by its instructions, rules and requirements; and refrain from engaging in any other pursuit or calling from which [he would] receive financial remuneration while this Agreement is in force." Agreement sec. 1.

As part of this general obligation, Van Matre agreed to "canvas regularly for applications for insurance contracts of the kinds and upon the plans sold by [Prudential]," to "advocate the class of insurance most suitable to the applicant's position," to "not press for a larger amount of insurance than the applicant is able to maintain," to "endeavor to keep in force the existing insurance of [Prudential], to secure the reinstatement of insurance which is lapsed and to perform all the duties, incident to the care and conservation of [Prudential's] business, that may be assigned to [him] from time to time by [Prudential]." Agreement sec. 2.

The agreement provided that Van Matre's "appointment as

Agent and this Agreement may be terminated either by [Van Matre] or [Prudential] at any time." (Agreement sec. 13.) Upon termination of the agreement, Van Matre was required:

1) to "immediately submit [books and records of accounts indicating money received by Van Matre on Prudential's behalf] for an inspection and accounting" (Agreement sec. 7(a));

2) to "hand over" to a proper representative of Prudential "all books, records, and supplies furnished" to Van Matre by Prudential (Agreement sec. 7(b));

3) to grant a "prior lien" to Prudential "upon any amounts due [Van Matre], [his] executors, administrators or assigns, by the terms of the Agreement, until the amount of such indebtedness is fully paid" (Agreement sec. 14); and

4) to authorize Prudential to release to third parties, upon inquiry, information regarding his record with the company, his "personal character, habits, ability, and cause for leaving the service" and to "release [Prudential] from all liability for damages in connection with the furnishing of such information," (Agreement sec. 15).

This agreement thus appears to have been identical to one recently considered by the United States Court of Appeals for the Seventh Circuit in *Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157. As in that case, no further post-termination obligations were expressly imposed, and "[n]o mention was made of the confidential nature of policyholder information." 776 F.2d 157,159.

From approximately April 1975 to June 1983, Van Matre was employed by Prudential pursuant to the agent's agreement and was assigned to Prudential's Decatur District Office in Decatur, Illinois. During his employment, Van Matre sold several types of Prudential whole-life insurance policies to various customers throughout the central Illinois area. He also "serviced" those policyholders, as well as other policyholders assigned to him by Prudential.

A Prudential whole-life insurance policy is a contract between Prudential and a policyholder that is, in the words of the policy, "insurance for the whole of life." Under the policy, Prudential agrees to pay a specified sum to the policyholder or beneficiary upon the death of the insured, and to pay dividends and other benefits during the life of the policy. The policies are based on actuarial assumptions which contemplate a long-term contractual relationship. Prudential's premium rates, estimates of expected dividends, cash surrender value accumulations, mortality assumptions and other economic

terms of the policy are premised upon the policy's remaining in force for a number of years. Prudential's experience has been that whole-life policies remain in effect for more than 15 years. Policyholders, however, have the right to cancel the policies at any time.

When he sold a whole-life policy, Van Matre received a first-year commission on the sale from Prudential equal to approximately 40% to 55% of the first-year premium paid by the policyholder. Van Matre also received commissions on policies he was assigned to service, but had not sold. The amount and rate of first-year commissions paid to Van Matre was predicated upon the expectation that the policies would remain in force for a long term. Nevertheless, Prudential did not expressly condition receipt of the commissions by Van Matre upon the policies' remaining in force for any minimum period of time. Rather, the payment of commissions by Prudential was dependent only upon its receipt of corresponding premiums from the policyholders.

In the course of his employment with Prudential, Van Matre was given access to information on each of the policyholders with whom he dealt. Prudential alleges that the information was compiled by it "at considerable effort and expense and is not readily available from other industry sources." (Complaint par. 17.) The information included, *inter alia*, "the identity of Prudential policyholders, policy amounts, premium rates, ages, condition of health, available life insurance premium ratings, policy anniversary dates, premium payment dates, beneficiary names, settlement options chosen, dividend options chosen, dividend accumulations, annual increases in cash surrender values and accumulated cash surrender values." (Complaint par. 17.) The complaint alleges that Van Matre was expressly and impliedly bound to treat such information "as the property of Prudential and not to disclose such information to third parties or use such information on his own account or on account of others." Complaint par. 17.

On or about June 30, 1983, Van Matre's employment with Prudential terminated. He then became an agent for Transamerica Insurance Company in central Illinois and began competing with Prudential in the sale of whole-life insurance policies. According to Prudential, Van Matre succeeded in inducing several of its whole-life insurance policyholders to terminate the policies which he had sold to or serviced for them while he was employed by Prudential and to purchase instead whole-life policies issued by his new employer. Prudential further alleges that "Van Matre continues to engage in such unlawful conduct by contacting Prudential policyholders and inducing

them to terminate their whole life policies." Complaint par. 20.

In June of 1984, Prudential responded to Van Matre's activities by filing this action in the circuit court of Effingham County. In its complaint, Prudential does not challenge Van Matre's right to compete generally with it, nor does it seek to prevent him from selling additional insurance to his former Prudential clients. Rather, it asks that Van Matre be enjoined only from "causing or attempting to cause, directly or indirectly, by any means, the termination of any Prudential whole life insurance policy placed or sold by Van Matre or serviced by him at any time." The complaint also prays for $100,000 in damages to compensate Prudential for the terminations of whole-life policies already caused by Van Matre. We have been advised, however, that Van Matre has declared bankruptcy and that this damage claim has now been abandoned. The request for injunctive relief alone remains.

The right of former Prudential agents such as Van Matre to engage in the type of conduct at issue in this case has been the subject of considerable litigation in recent years. (See *Prudential Insurance Co. v. Schwend* (S.D. Ill. 1985), No. 85—5302, *aff'd mem.* (7th Cir. 1986), 796 F.2d 477; *Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157; *Prudential Insurance Co. v. Diemer* (N.D. Ind. 1986), 637 F. Supp. 313; *Prudential Insurance Co. v. Crouch* (S.D. Ind. 1985), 606 F. Supp. 464, *aff'd mem.* (7th Cir.1986), 796 F.2d 477; *Prudential Insurance Co. v. McCurry* (1986), 143 Ill. App. 3d 222, 492 N.E.2d 1026; *Prudential Insurance Co. v. Baker* (Ind. App. 1986), 499 N.E.2d 1152.) Although virtually all of the reported decisions on the matter have ruled adversely to Prudential, some applied the substantive law of Indiana, not Illinois; some were decided by Federal, not State courts; and the cases came before the courts in a variety of procedural postures and factual contexts. While instructive in considering the arguments now before us, none is therefore completely dispositive of all the issues raised by Prudential on this appeal. We must therefore consider those issues further.

■ As noted at the outset of this opinion, count I of Prudential's complaint was premised on the theory of tortious interference with contract. The essential elements of this tort are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." (*Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413

N.E.2d 98, 101.) Although some formulations of the cause of action include "malice" as a necessary element, "malice" in this context means only the intent to interfere without sufficient justification. 90 Ill. App. 3d 547, 552 n.1, 413 N.E.2d 98, 101 n.1.

In this case, Prudential does not claim that any of its contracts were actually breached by a policyholder. The whole-life policies at issue were terminable at will, and the basis for count I is simply that Van Matre had "intentionally, willfully and maliciously interfered" with Prudential's "advantageous relations and contracts without justification by inducing and causing Prudential policyholders to *terminate* their whole life policies which he had sold or serviced while employed by Prudential." (Emphasis added.) Complaint par. 20.

Contrary to arguments made by Van Matre, the "at will" nature of the policies and the absence of a breach by the policyholders will not, alone, relieve him from liability for tortious interference as defined above. "[U]ntil it is terminated [an at will contract] is a subsisting relation, of value to plaintiff, and presumably to continue in effect." (*Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 125, 435 N.E.2d 827, 830.) Accordingly, Illinois courts have long recognized that causing the termination of a contract terminable at will intentionally and without just cause is actionable. *Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 529-30, 444 N.E.2d 579, 584, *rev'd in part on other grounds* (1984), 99 Ill. 2d 528, 459 N.E.2d 1332.

■ There is no dispute here that Van Matre's inducement of Prudential policyholders to terminate their whole-life policies was intentional. The central issue is, instead, whether Prudential has alleged sufficient facts to support its assertion that this inducement by Van Matre was not justified. One type of justification for interference with contractual relations which has been recognized in Illinois is lawful competition. *Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 48, 366 N.E.2d 319, 327; *Michigan Avenue National Bank v. State Farm Insurance Cos.* (1980), 83 Ill. App. 3d 507, 513, 404 N.E.2d 426, 431.

As set forth in section 768 of the Restatement (Second) of Torts (1979):

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly [*i.e.*, without justification] with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interests in competing with the other." Restatement (Second) of Torts sec. 768 (1979).

In the case before us, Prudential has specifically alleged that Van Matre is in competition with it in the sale of whole-life insurance policies. The contractual relations with which Van Matre has been charged with interfering, Prudential whole-life insurance policies, are clearly a matter involved in the competition between Van Matre and Prudential. Prudential has not claimed that Van Matre's purpose in inducing the termination of the policies relates to anything other than advancing his interests in competing with Prudential, nor has it averred that Van Matre's actions will create or continue an unlawful restraint of trade. Under these circumstances, count I of Prudential's complaint can be sustained only if the means allegedly employed by Van Matre were wrongful.

■■ Prudential cites in its complaint two allegedly wrongful means used by Van Matre to cause the termination of the policies in question. First, Prudential claims that Van Matre violated Illinois Department of Insurance Rule 9.17, which concerns the procedures to be followed when selling replacement life insurance policies. We agree that "[c]onduct specifically in violation of statutory provisions or contrary to established public policy may for that reason make an interference improper." (Restatement (Second) of Torts sec. 767, comment c at 31 (1979).) As discussed in *Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157, 161-62, however, Rule 9.17 was designed to protect policyholders, not insurers. Just as that rule may therefore not serve as the basis for a right of action by an insurance company against a former agent to restrain the agent's competitive activities unless the rule was incorporated into the agency contract (776 F.2d 157, 162), a circumstance not present here, we likewise believe that a violation of that rule cannot be invoked by an insurer to render improper interference by a former agent with terminable-at-will insurance policies where such interference is undertaken pursuant to otherwise lawful competition.

Second, Prudential alleges that in inducing termination of the insurance policies, Van Matre used the information he had acquired while in Prudential's employ regarding both the policyholders with

whom he had dealt and their policies. Although Prudential's agency agreement with Van Matre did not purport to restrict Van Matre's right to use that information after termination of the agreement, Prudential nevertheless contends that said use was wrongful because the information was confidential. While the misappropriation of confidential information by a competing former employee is the type of "wrongful means" which will render improper the interference with terminable at will contracts (see *Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157, 163; *TAD, Inc. v. Siebert* (1978), 63 Ill. App. 3d 1001, 380 N.E.2d 963), Prudential's claim here must nonetheless fail.

■■ ■ In arguing that Van Matre's use of its confidential policyholder information was wrongful, Prudential essentially claims that the policyholder information constitutes a trade secret in which it holds a protectable interest. Under Illinois law, no business has a proprietary interest in customers themselves, but it can have a proprietary interest in lists of customers it maintains. (*Cincinnati Tool Steel Co. v. Breed* (1985), 136 Ill. App. 3d 267, 277, 482 N.E.2d 170, 176.) A customer list or other customer information constitutes a trade secret in which an employer holds a protectable interest where the employer developed the information over a number of years, at great expense, and kept the information under lock and key. The same type of information is not a trade secret, however, where the employer had not treated the information as confidential and secret, where those in the field commonly knew the information or could have easily duplicated it, or where the employer's competitors knew the employer's customers. (*American Wheel & Engineering Co. v. Dana Molded Products, Inc.* (1985), 132 Ill. App. 3d 205, 210, 476 N.E.2d 1291, 1295.) In addition, the use of a trade secret by a former employee is not *per se* actionable. The employer must plead and prove that the employee obtained the trade secret through a breach of confidentiality. (*Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358, 425 N.E.2d 1034, 1038.) An employee breaches his confidential relationship with his employer:

> "where he acts in a manner inconsistent with his employer's interest during his employment in that he surreptitiously copies or memorizes trade secret information for use after his termination in the solicitation of his employer's customers or utilizes information in his possession to develop a product to compete with his employer's product while still in his employ." 99 Ill. App. 3d 353, 358-59, 425 N.E.2d 1034,1038.

■■ As we have noted, Prudential has alleged that the informa-

tion it maintained on its policyholders was compiled by it "at considerable effort and expense and is not readily available from other industry sources." (Complaint par. 17.) The complaint avers no facts, however, which indicate that the information was actually treated as confidential and secret by Prudential or that it was obtained by Van Matre through surreptitious means. More importantly, we believe that Prudential's claims of trade secret and breach of confidentiality are flatly inconsistent with its position on appeal that Van Matre is not prohibited from using any of the information he obtained during his employment to solicit the sale of insurance products other than whole-life policies. Prudential cannot have it both ways. The information is either a protectable trade secret, or it is not. Count I of Prudential's complaint was therefore properly dismissed.

Count II of Prudential's complaint alleges that by causing Prudential policyholders to terminate their whole-life policies, Van Matre also breached an implied covenant of good faith and fair dealing in his agent's agreement. According to Prudential, Van Matre was bound under that implied covenant "to refrain from doing anything during his employment or afterwards which would destroy or injure Prudential's right to receive the fruits of [the Agent's] Agreement including the Prudential policies which Van Matre sold or serviced on behalf of Prudential." (Complaint par. 44.) Prudential further alleged that "[s]aid covenant applies to each and every policy sold or serviced by Van Matre for the expected duration of that policy and continued even after Van Matre ceased working for Prudential." Complaint par. 44.

■ We agree that in Illinois, as in the majority of American jurisdictions, a covenant of good faith and fair dealing is implied in every contract as a matter of law, absent an express disavowel. (*Prudential Insurance Co. v. McCurry* (1986), 143 Ill. App. 3d 222, 225, 492 N.E.2d 1026, 1028.) Under this rule, the law will imply an agreement to refrain from doing anything which will destroy or injure the other party's right to receive the fruits of the contract. (17A C.J.S. *Contracts* sec. 328, at 286 (1963).) Based on the allegations of Prudential's complaint, however, we find no merit to its contention that allowing Van Matre to induce termination of its whole-life insurance policies would injure or destroy its right to receive the "fruits" of the agent's agreement. The "fruits" of the agreement enjoyed by Prudential consisted of the sale of new policies, the servicing of assigned policies and the receipt of premiums directly attributable to the sales or servicing of those policies by Van Matre. The "fruits" of the agreement enjoyed by Van Matre were

the commissions paid to him by Prudential from the premiums on the policies.

The "fruits" as to each party were, as one court has held, "inexorably linked." (*Prudential Insurance Co. v. Diemer* (N.D. Ind. 1986), 637 F. Supp. 313, 315.) The receipt of the "fruits" of the agreement by Van Matre was contingent upon his performing the sales and servicing which provided the "fruits" of the agreement to Prudential. He could not receive a commission unless the premium on a policy he sold or serviced was paid, and he was entitled to commissions based on premiums received by Prudential on those policies only while he remained in Prudential's employ. Following termination of his employment, he was not entitled to future commissions even where premiums were paid to keep the policies in force. (*Prudential Insurance Co. v. Crouch* (S.D. Ind. 1985), 606 F. Supp. 464, 469, *aff'd mem.* (7th Cir. 1986), 796 F.2d 477.) If, however, a policyholder were to cancel a policy for which Van Matre had been paid during the policy year and a premium refund were made by Prudential to the policyholder, Van Matre could be required to return to Prudential the commission it had paid to him which was attributable to the refunded premium. 606 F. Supp. 464, 470.

■ Prudential makes no claim that Van Matre has refused to reimburse Prudential for commissions paid to him from premiums for policies which were subsequently canceled and on which Prudential had to make a refund to a policyholder. Rather, the gravamen of its complaint is that Van Matre should be prevented from doing anything which would interfere with its continued receipt of future premiums on policies previously sold or serviced by Van Matre even after he stopped working for Prudential and no longer received commissions from it. Just as Van Matre's right to receive commissions from future premiums ceased after he left Prudential's employ, however, Prudential's right to prevent Van Matre from interfering with its receipt and enjoyment of future premiums on policies sold or serviced by Van Matre ended when his employment terminated and it ceased paying him commissions. Any future premiums paid to Prudential for which Van Matre would not receive a commission are not the "fruits" of the agency agreement, but of the insurance contract between Prudential and the policyholder. (*Prudential Insurance Co. v. Diemer* (N.D. Ind. 1986), 637 F. Supp. 313, 315.) Following the completion of the obligations under the agency agreement for which he was paid a commission, Van Matre was therefore free to exercise his right to compete against Prudential as provided under Illinois law. See *Prudential Insurance Co. v. Crouch*

(S.D. Ind. 1985), 606 F. Supp. 464, 470, *aff'd mem.* (7th Cir. 1986), 796 F.2d 477; *Prudential Insurance Co. v. Baker* (Ind. App. 1986), 499 N.E.2d 1152, 1154.

As a general matter, the law in this State is that the principles as to good faith, loyalty and personal interest of an agent do not apply after termination of the agency relationship. After such termination, the former agent may, absent an express covenant to the contrary, negotiate for his own interest and may act adversely to his former principal. *Prudential Insurance Co. v. McCurry* (1986), 143 Ill. App. 3d 222, 226, 492 N.E.2d 1026, 1028.

In addressing the particular rights and obligations of salesmen as to competition with their former employers, one Illinois court has noted:

> "Our free economy is based upon competition. One who works for another cannot be compelled to erase from his mind all of the general skills, knowledge, acquaintances and the over-all experience which he acquired during the course of his employment. The success of a person who is engaged in sales depends largely upon his personal friendships and the confidences inherent therein. Absent special circumstances, such person cannot be prevented from seeking out customers of his former employer when he has entered into a competing business or gone to work for a competitor.
>
> If a salesman has agreed to a restrictive covenant in his employment contract, or if he has fraudulently and surreptitiously copied or removed lists of customers from a prior employer, or if the names of actual or potential customers are confidential, not subject to memory, are not publicly listed or otherwise readily obtainable, then, under proper circumstances, such salesmen might be enjoined from soliciting business from the customers of his prior employer. Absent such circumstances, however, there can be no such prohibition."
> *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357, 228 N.E.2d 742, 746.

Accordingly, it has recently been held that in the absence of any restrictive covenant in an employment contract, the improper taking of a customer list or fraud, a former employee may compete in business with his former employer and solicit former clients without breach of any implied obligation, so long as there was no demonstrable competitive business activity on his part prior to the termination of his employment. *Prudential Insurance Co. v. McCurry* (1986), 143 Ill. App. 3d 222, 227, 492 N.E.2d 1026, 1029.

■■ In this case, Prudential makes no claim that Van Matre engaged in any competitive activity while still in Prudential's employ. According to the complaint, Van Matre solicited business from his former Prudential customers only after his termination. There is no dispute that Prudential's agency agreement contained no express provisions prohibiting such solicitation, and, as our previous discussion has shown, Prudential's complaint does not adequately allege that the customer information used by Van Matre was confidential and entitled to protection as a trade secret or that it was obtained through surreptitious means.

■■ Before leaving this discussion, we must observe, as did the United States Court of Appeals for the Seventh Circuit, that "[i]t is clear that the primary motivation for Prudential's vigorous prosecution of this action is that it is now dissatisfied with the agreement that it presumably signed with many other agents." (*Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157, 164.) Prudential seeks to establish a legal precedent which will, in effect, relieve it of the consequences of its failure to place express restrictions in the agreement on an agent's post-termination activities. As a general matter, however, implied covenants are not favored in the law. (17A C.J.S. *Contracts* sec. 328, at 287 (1963).) "[A] plaintiff ordinarily cannot enlist the support of the judiciary to reform a contract the plaintiff and defendant freely entered into." (*Prudential Insurance Co. v. Sipula* (7th Cir. 1985), 776 F.2d 157, 164). As stated in *Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 798, 461 N.E.2d 1031, 1035, "[t]he court cannot add to contracts of parties elements which they did not themselves provide, nor protect one of the contracting parties against subsequent contingency, which would have been advantageous to him, had he but foreseen it." The trial court therefore did not err in dismissing count II of plaintiff's complaint.

■■ Under count III of its complaint, Prudential asserts, in the alternative, that the same conduct by Van Matre upon which counts I and II are premised constituted a breach of his fiduciary duties. We disagree. There is no question that:

"[w]hile acting as an agent or employee of another, one owes the duty of fidelity and loyalty; accordingly, a fiduciary cannot act inconsistently with his agency or trust; *i.e.*, solicit his employer's customers for himself, entice coworkers away from his employer, or appropriate his employer's personal property." *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 683, 379 N.E.2d

1228, 1237.

As we have just discussed, however, the principles as to good faith, loyalty and personal interest of the agent have no application after the termination of the agency, "and, generally, after such termination the former agent is free to negotiate for his own interest and may act adversely to his former principal or deal with his former principal at arms' length." (1 Ill. L. & Prac. *Agency* sec. 67, at 709 (1953); see also *Ellis & Marshall Associates, Inc. v. Marshall* (1973), 16 Ill. App. 3d 398, 404, 306 N.E.2d 712, 717.) Accordingly,

"[e]xcept where the knowledge or information acquired during the course of the agency may constitute trade secrets, an agent after the termination of the agency who has gone into the same business for himself may lawfully solicit the future business of his former principal's customers, and every agent has the lawful right to carry into his new employment all the skill and knowledge acquired in previous engagements, and nothing short of an express contract on his part not to do so will debar him." (1 Ill. L. & Prac. *Agency* sec. 67, at 710 (1953).)

Again, no express covenant existed to prevent Van Matre from competing with Prudential in the sale of whole-life policies after termination of his employment or from using knowledge he had acquired while in Prudential's employ in soliciting the business of Prudential's customers, and Prudential cannot on the facts alleged here sustain its claim that its customer lists and policy-holder information rise to the level of a trade secret entitled to protection. We must therefore conclude, as did the trial court, that Prudential's complaint also fails to state a claim for breach of fiduciary duty.

For the foregoing reasons, the judgment of the circuit court of Effingham County is affirmed.

Affirmed.

WELCH and KASSERMAN, JJ., concur.