Stanley R. PATTON, Plaintiff,

v.

The UNIVERSITY OF CHICAGO
HOSPITALS, Defendant.

No. 88 C 1058.

United States District Court,
N.D. Illinois, E.D.

Feb. 16, 1989.

Donald J. Parker, Donald J. Parker, Ltd., Downers Grove, Ill., for plaintiff.

Lisa A. Weiland, Terry J. Smith, Schiff Hardin & Waite, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Following his termination, plaintiff filed this suit against his former employer. Based on claims of age discrimination, intentional infliction of emotional distress, and breach of contract, plaintiff seeks reinstatement with back pay as well as compensatory and punitive damages. Defendant moves to dismiss plaintiff's claims of intentional infliction of emotional distress and breach of contract. Defendant also moves to dismiss several of plaintiff's allegations of age discrimination. In addition, defendant moves to strike plaintiff's request for punitive damages. For the reasons stated herein, this court denies defendant's motion to dismiss plaintiff's age discrimination and breach of contract claims. The court grants defendant's motion to dismiss plaintiff's claim of intentional infliction of emotional distress. Additionally, the court grants defendant's motion to strike plaintiff's request for punitive damages.

## FACTS

In late 1980, defendant, the University of Chicago Hospitals ("UCH"), hired plaintiff Stanley Patton as a manager. In his first five years of employment with UCH, Patton received consistently favorable job evaluations, four salary increases, and a promotion. Sometime in 1985, officials at UCH reassigned Patton to another department. After working in this new department for several months, Patton received a very unfavorable job evaluation in January 1986. He met with his supervisors on January 25, 1986 to discuss the evaluation. Patton alleges that during the January 25 meeting, his supervisors told him that he was being terminated because he earned too much money. On February 7, 1986, Patton received written notice of his termination effective March 31, 1986. The no-tice characterized Patton's termination as a routine layoff consistent with UCH's reduction-in-force policy. This policy states that with a few limited exceptions, UCH shall commence any layoff of permanent employees by terminating the least senior employees within each job classification. As a result of his 1985 transfer, Patton ranked as the least senior employee within his new department. Pointing to Patton's lack of seniority, the officials who terminated Patton claimed that they were simply applying UCH's reduction-in-force policy.

Patton, who is 65 years old, contends that UCH terminated him because of his age. He has filed suit pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (1982 & Supp. IV 1986). Patton's complaint against UCH also asserts two state law claims: intentional infliction of emotional distress and breach of employment contract.

## DISCUSSION

On August 10, 1988, this court dismissed Patton's original complaint because Patton failed to allege that he had filed a discrimination charge with the Illinois Department of Human Rights. As the court noted, a person may not bring suit under the ADEA without first filing a charge with the state agency that reviews age discrimination claims. *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072–73, 60 L.Ed.2d 609 (1979); *Smith v. General Scanning, Inc.,* 832 F.2d 96, 98–99 (7th Cir.1987). Having dismissed Patton's suit on procedural grounds, the court did not address the merits of Patton's claims.

Following the dismissal of his suit, Patton moved to amend his complaint. He cured the procedural defect in his pleadings by asserting in his amended complaint that he filed age discrimination charges with the Illinois Department of Human Rights on June 25, 1986. The court then reinstated Patton's lawsuit. Despite the amendment of Patton's complaint, UCH continues to insist that the court should dismiss most of Patton's claims. The court will now exam-

ine UCH's challenges to Patton's second amended complaint.

### I. *Age Discrimination*

 Count I of the complaint alleges that UCH discriminated against Patton on the basis of his age. Patton claims that in April 1983, UCH started to implement a policy of terminating older employees and replacing them with younger employees at greatly reduced salaries. Patton further asserts that in 1984, UCH began to transfer older employees and change their job descriptions so as to strip these employees of their seniority and make them eligible for layoff. The complaint depicts Patton's 1985 transfer, his poor job evaluation in January 1986, and his March 1986 termination as part of UCH's overall scheme to phase out older employees with high salaries. In support of this theory, Patton alleges that when he met with his supervisors on January 25, 1986, they told him that his position was being eliminated because he earned too much money.

Except for Patton's termination, all of the discriminatory acts alleged by the complaint occurred more than two years before February 5, 1988, the date on which Patton filed suit. UCH moves to dismiss Patton's allegations of pretermination discrimination, contending that such allegations are barred by the two-year statute of limitations for ADEA claims. *See* 29 U.S.C. § 626(e). The amendment of Patton's complaint, however, has rendered UCH's motion moot. Patton no longer asserts an ADEA claim based on his alleged demotion and harassment; rather, he founds his age discrimination claim entirely on UCH's decision to terminate him. By narrowing the focus of his ADEA claim, Patton has averted any potential problems with the statute of limitations. Although Patton continues to allege that UCH discriminated against him prior to his termination, he makes these allegations for the sole purpose of demonstrating a pattern of discrimination by UCH. While the statute of limitations may prohibit Patton from recovering damages based on any pretermination discrimination, the statute does not prevent Patton from alleging such discrimination for the limited purpose of establishing UCH's discriminatory motive for terminating him. Therefore, the court sees no reason to dismiss any of the age discrimination allegations contained in Patton's second amended complaint.

### II. *Breach of Employment Contract*

 Patton also claims that UCH breached an employment contract with him by terminating him. Although UCH contends that no such contract exists, Patton has pointed to two UCH policies that might form the basis for a contract action. In his original complaint, Patton identified UCH's published policy against age discrimination as the source of his contractual rights. This antidiscrimination policy, however, does not create a contract between UCH and its employees. The policy merely constitutes a reiteration of a pre-existing legal duty, unsupported by consideration. Because federal law already prohibits age discrimination, UCH's breach of its own antidiscrimination policy would not warrant an award of contract damages to Patton. *See Willis v. Evans Products Co.*, No. 86 C 9111 (N.D.Ill. May 14, 1987) [1987 WL 11337]. Apparently conceding this point, Patton has recently revised his contract claim. He now seeks contract damages based on UCH's reduction-in-force policy, a copy of which is attached to the second amended complaint. With a few limited exceptions, this policy states that if a reduction of UCH's work force should become necessary, UCH will proceed to lay off its employees in reverse seniority order, beginning with the termination of the least senior employees within each department. Patton contends that the reduction-in-force policy amounts to an employment contract. He further asserts that UCH breached this contract when it terminated him.

To evaluate Patton's amended contract claim, this court must first determine whether UCH's reduction-in-force policy constitutes a contract. Normally, an employment relationship without a fixed duration is terminable at will by either party. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 11, 505 N.E.2d 314, 317 (1987). None-

theless, an employer's policy statement may alter an employee's at-will status by creating enforceable contractual rights. Under Illinois law, UCH's reduction-in-force policy qualifies as an employment contract if it satisfies the following three criteria:

First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Id.* at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318.

UCH argues that its reduction-in-force policy does not contain a clear enough promise of job security to establish an employment contract. Although the policy appears to insulate senior employees from layoff, UCH points out that the policy does not mandate strict adherence to the practice of laying off employees in reverse order of seniority. Under the policy, for instance, hospital supervisors may select employees for layoff based on factors other than seniority, factors such as an employee's qualifications and past performance. UCH contends that because its layoff procedures do not guarantee complete job security for senior employees, the reduction-in-force policy does not create a binding employment contract.

As UCH correctly observes, an employer's policy statement can form the basis for a contract "only when specific procedures have been prescribed by positive and mandatory language." *Doe v. First National Bank of Chicago*, 865 F.2d 864, 872 (7th Cir.1989). This court, however, cannot accept UCH's assertion that its layoff policy represents nothing more than a set of nonmandatory guidelines. The policy not only articulates specific layoff procedures; it also explicitly declares that UCH supervisors *must* follow those procedures. More-

over, while the policy allows for some exceptions to the general rule that layoffs shall proceed in reverse seniority order, UCH supervisors do not possess unbridled discretion to base layoff decisions on factors other than seniority. Whenever a supervisor seeks to deviate from the practice of laying off least senior employees first, the reduction-in-force policy requires the supervisor to follow certain procedures. For example, a supervisor may wish to protect one of his least senior employees from layoff because the employee has special qualifications. In order for this employee to retain his job, the supervisor must submit a special request to UCH's Human Resources Management department. Thus, even though UCH's layoff policy does not ensure total job security for senior employees, the policy nonetheless mandates the implementation of specific layoff procedures. After reading this policy, an employee could reasonably believe that UCH had made a clear promise to abide by certain designated procedures when reducing its work force.

Even if an employer's policy contains a clear promise, however, such a policy does not create a contract unless the employer disseminates its policy statement to its employees in such a manner that the employees could reasonably construe the statement as an offer. Based on this dissemination requirement, UCH raises a second challenge to Patton's contract theory. Almost as an afterthought, in a footnote to its reply memorandum, UCH asserts that it did not disseminate its layoff policy to employees like Patton. Offering no substantial evidence to support this assertion, UCH simply points out that the policy is addressed to supervisors who must make layoff decisions, not to employees who might face termination. This observation, however, bears little relevance to the issue of how widely UCH has promulgated the policy. The fact that UCH designed the policy to govern the actions of supervisors does not foreclose the possibility that UCH distributed the policy to both supervisory and nonsupervisory personnel. Perhaps UCH can produce more persuasive evidence that it disseminated the policy only to a limited

audience of supervisors; but UCH has yet to present such evidence before this court. Consequently, at this early stage of the litigation, the court must assume the veracity of Patton's allegation that UCH officials gave him a copy of the layoff policy when he started working at UCH.

In his second amended complaint, Patton has sufficiently alleged the three elements necessary to transform UCH's reduction-in-force policy into a binding contract. The policy makes a clear promise that UCH supervisors will follow certain procedures; UCH apparently disseminated the policy to its employees; and Patton began to work at UCH after learning of the policy. Thus, if Patton can show that UCH violated its own layoff policy by terminating him, he can recover damages for breach of contract.

UCH contends, however, that it did not breach any contract that the reduction-in-force policy may have established. In fact, UCH argues that it was faithfully adhering to its layoff policy when it terminated Patton, the least senior employee within his department at the time of his termination. This argument ignores Patton's allegations that UCH followed the letter of the layoff policy while violating its spirit. In particular, Patton claims that UCH acted in bad faith when it transferred him to a new department in 1985. Prior to his transfer, Patton had worked for several years in the same department. Due to Patton's seniority within this department, UCH could not lay him off without making a special exception under its reduction-in-force policy. As a result of his transfer, however, Patton became the least senior employee in his new department, a leading candidate for layoff. Patton alleges that UCH transferred him solely for the purpose of circumventing its policy that layoffs shall normally proceed in reverse order of seniority. If UCH reassigned Patton simply to strip him of his seniority and leave him vulnerable to layoff, then UCH breached the covenant of good faith implicit in its reduction-in-force policy. Absent an express disavowal, every contract under Illinois law contains an implied covenant of good faith and fair dealing. Based on this covenant, "the law will imply an agreement to refrain from doing anything which will destroy or injure the other party's right to receive the fruits of the contract." *Prudential Insurance Co. of America v. Van Matre*, 158 Ill.App. 3d 298, 308, 110 Ill.Dec. 563, 569, 511 N.E. 2d 740, 746 (1987). Patton alleges that UCH transferred him in a deliberate effort to eviscerate his right to job security under the reduction-in-force policy. If Patton can prove this allegation, he can recover contract damages based on UCH's breach of the covenant of good faith.

Patton's second amended complaint adequately alleges the two prerequisites for maintaining a contract action: the existence of a contract and its breach. Consequently, the court denies UCH's motion to dismiss Patton's contract claim.

### III. *Intentional Infliction of Emotional Distress*

In addition to alleging age discrimination and breach of contract, Patton asserts a separate claim for intentional infliction of emotional distress. To sustain such a claim under Illinois law, Patton must establish that: (1) UCH engaged in extreme and outrageous conduct; (2) UCH intended to cause emotional distress (or showed reckless disregard of the probability of causing such distress); (3) Patton suffered severe or extreme emotional distress; and (4) UCH's outrageous conduct actually and proximately caused Patton's emotional distress. *See Tobias v. Winkler*, 156 Ill.App.3d 886, 896, 109 Ill.Dec. 211, 217, 509 N.E.2d 1050, 1056 (1987); *Farnor v. Irmco Corp.*, 73 Ill.App.3d 851, 854–55, 29 Ill.Dec. 894, 898, 392 N.E.2d 591, 595 (1979). Although Patton accuses UCH of intentional infliction of emotional distress, he concedes that he cannot adequately plead all four elements of the tort. Nonetheless, he contends that he should not have to satisfy the tort's stringent pleading requirements in order to recover damages for his emotional suffering. According to Patton, a plaintiff needs to plead the four elements of intentional infliction of emotional distress only if he intends to state an independent claim for that tort, a claim unrelated to any other wrongful or tortious

conduct. Patton insists that he is not attempting to maintain such an independent claim. Rather, he characterizes his emotional distress claim as derivative; his mental anguish stems from UCH's alleged acts of age discrimination and breach of contract. If these acts provided the basis for an award of damages, Patton asserts that he could also recover damages for psychic pain simply by demonstrating that UCH's wrongful conduct caused him emotional distress. In support of this theory, Patton cites section 47 of the Second Restatement of the Law of Torts:

> Where ... tortious conduct ... results in the invasion of another legally protected interest, ... emotional distress caused either by the resulting invasion or by the conduct may be a matter to be taken into account in determining the damages recoverable. In many instances there may be recovery for emotional distress as an additional, or "parasitic" element of damages in an action for such a tort.

Restatement (Second) of Torts § 47 comment b (1965).

In law as in biology, a parasite can survive only by drawing sufficient nourishment from its host. Unfortunately for Patton, neither his ADEA claim nor his contract claim can serve as an adequate host for his parasitic claim for intentional infliction of emotional distress. Under the ADEA, a plaintiff cannot recover damages for emotional suffering caused by age discrimination. *Pfeiffer v. Essex Wire Corp.,* 682 F.2d 684, 686–88 (7th Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed. 2d 606 (1982); *Wilkes v. United States Postal Service,* 548 F.Supp. 642 (N.D.Ill. 1982). Similarly, Illinois law does not permit compensation for mental distress resulting from a breach of contract, "except where the breach was wanton or reckless and caused bodily harm, or where the defendant had reason to know, when the contract was made, that its breach would cause mental suffering for reasons other than mere pecuniary loss." *Maere v. Churchill,* 116 Ill.App.3d 939, 944, 72 Ill. Dec. 441, 444, 452 N.E.2d 694, 697 (1983). Patton has failed to allege any of the exceptional circumstances that would warrant an award of damages for emotional dis-

tress stemming from UCH's alleged breach of contract. Ultimately, Patton's allegations of emotional suffering, even if proven, would not entitle him to additional damages. For this reason, the court dismisses Patton's claim for intentional infliction of emotional distress.

### IV. *Punitive Damages*

 Finally, Patton seeks $1,000,000 in punitive damages; but his complaint provides no foundation for such an award. The ADEA prohibits Patton from recovering punitive damages for UCH's allegedly discriminatory conduct. *See Pfeiffer,* 682 F.2d at 686–88. Moreover, Patton cannot recover punitive damages based on UCH's alleged breach of contract unless "the breach constitutes an independent and willful tort accompanied by fraud, malice, wantonness or oppression." *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.,* 586 F.Supp. 926, 929 (N.D.Ill.1984). The breach depicted by Patton's complaint —a bad faith breach of an employment contract—does not constitute an independent tort under Illinois law. *See Disario v. Enesco Imports Corp.,* 165 Ill.App.3d 901, 117 Ill.Dec. 415, 520 N.E.2d 766 (1987); *Martin v. Federal Life Insurance Co.,* 109 Ill.App.3d 596, 606–07, 65 Ill.Dec. 143, 151, 440 N.E.2d 998, 1006 (1982). Thus, even if UCH willfully and maliciously breached its layoff policy, such a breach would not justify the recovery of punitive damages. Because neither of Patton's claims can support a punitive damage award, the court grants UCH's motion to strike Patton's request for punitive damages.

### CONCLUSION

For the foregoing reasons, this court denies UCH's motion to dismiss Patton's ADEA and contract claims. The court grants UCH's motion to dismiss Patton's claim for intentional infliction of emotional distress. Finally, the court grants UCH's motion to strike Patton's request for punitive damages.

IT IS SO ORDERED.