**DAMES & MOORE, a Delaware corporation, Plaintiff,**

v.

**BAXTER & WOODMAN, INC., an Illinois corporation, and Simon B. Golden, an Illinois resident, Defendants.**

No. 98 C 0902.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 6, 1998.

818

Michael C. O'Neil, Colleen E. McManus, Rudnick & Wolfe, Chicago, IL, Larry Selander, Attorney at Law, Chicago, IL, for Dames & Moore Inc., plaintiff.

Carl E. Metz, II, R. Mark Gummerson, Campion, Curran, Rausch, Gummerson & Dunlop, Crystal Lake, IL, for Baxter & Woodman, Inc., defendant.

Elaine Saphier Fox, Steven L. Baron, Jeremy J. Glenn, D'Ancona & Pflaum, Chicago, IL, for Simon B Golden, defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Dames & Moore, has filed a five-count complaint against defendants Baxter & Woodman, Inc. ("Baxter") and Simon B. Golden ("Golden") (collectively "defendants"). Plaintiff has alleged that: (1) Golden breached fiduciary and contractual obligations he owed to plaintiff (Count I); (2) defendants conspired to have Golden commit these breaches (Count II); (3) defendants tortiously interfered with the business relationships that plaintiff had with several of its employees and clients (Counts III and IV); and (4) that Baxter was unjustly enriched at the expense of plaintiff due to defendants' alleged wrongdoing (Count V). Defendants have filed separate motions to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, their motions are granted in part and denied in part.

### BACKGROUND

For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). This case involves the claims of an engineering consulting firm, Dames & Moore, against one of its competitors, Baxter & Woodman, and one of its former employees, Simon Golden, for activities that resulted in plaintiff's loss of several clients and employees. Federal jurisdiction is based on the parties' diverse citizenship. Plaintiff is a Delaware corporation with its principal place of business in Los Angeles, California. Baxter is an Illinois corporation with its principal place of business in Illinois. Golden is a resident of Illinois.

On June 27, 1992, plaintiff acquired the assets of the engineering firm, Midwest Consulting ("Midwest"). Golden began working for Midwest on August 1, 1990, and was hired by plaintiff when it acquired Midwest. During the course of his employment with plaintiff, Golden became the senior project manager for two of plaintiff's municipal clients: the Villages of Grayslake and Round

Lake. Plaintiff provided municipal engineering services to Grayslake beginning in June, 1992, when it acquired Midwest, which had previously provided such services to Grayslake pursuant to a series of work orders which plaintiff claims collectively constituted a contract. Plaintiff provided similar services to Round Lake starting in July, 1997, pursuant to a written, at-will contract and related work orders.

As senior project manager, Golden had numerous responsibilities. He was plaintiff's primary contact with Grayslake and Round Lake. He was also in charge of the administration and supervision of the services provided to these clients, and managed the offices that were dedicated to these clients. Golden also supervised employees who worked in these offices, including Al Beaber ("Beaber") and Michael DeBennette ("DeBennette").

Golden's position also gave him access to allegedly confidential and proprietary information about Grayslake and Round Lake, and plaintiff's employees. To protect this information, plaintiff required Golden to sign a Confidentiality Agreement, which he did on March 26, 1996. On the same day, Golden signed an Acknowledgment of the terms of plaintiff's Employee Handbook. The Handbook contained the following statement:

FIDUCIARY RESPONSIBILITY

Each employee of DAMES & MOORE is charged with recognizing his or her fiduciary responsibility to the firm and its clients and the obligation to promote the firm's best interests while on the payroll and after leaving the employ of DAMES & MOORE. This interest extends to client lists, designs, reports, patents owned by firm, or by clients per contractual commitment. The employee shares no rights in these proprietary materials even though he/she may have been directly involved in the creation and reporting of the ideas, designs, recommendations or other intellectual endeavors and other proprietary materials.

At some unspecified date, Golden began negotiating with plaintiff's competitors regarding the diversion of plaintiff's clients, Grayslake and Round Lake, and plaintiff's employees who worked on behalf of these clients. Plaintiff has attached to its complaint, as evidence of Golden's conduct, a letter from John Smith of Smith Engineering, a competitor of plaintiff who is not a party to this lawsuit. The letter is dated October 30, 1997, and is addressed to Golden and four of plaintiff's other employees. In the letter, Smith states, "For the past month I have been communicating with Si Golden regarding the potential for your 'team' to join the Smith Engineering 'family'." He further notes, "All five employees mentioned above would remain in their existing capacity in providing full time service to the municipalities of Grayslake and Round Lake."

Shortly after this letter was written, three of the employees to whom the letter was addressed, Golden, Beaber, and DeBennette, resigned their positions with plaintiff to join Baxter. Golden tendered his resignation on November 3, 1997 effective November 18, 1997. Beaber and DeBennette tendered their resignations on November 5, 1997, effective November 19, 1997. On November 17, 1997, Round Lake wrote to plaintiff and terminated its at-will contract, indicating that it was doing so primarily because of the transfer of the three employees mentioned above. On November 21, 1997, Grayslake wrote to plaintiff and informed it that it was transferring most of its business to Baxter, but that it would honor several outstanding projects which plaintiff was then performing.

Plaintiff alleges that Baxter and Golden conspired to bring about the resignations of plaintiffs' employees and the loss of business suffered by plaintiff. Plaintiff alleges that pursuant to the defendants' agreement, Golden solicited Beaber, DeBennette, and other employees of plaintiff to leave plaintiff and work for Baxter. Plaintiff also alleges that Golden solicited Grayslake and Round Lake to change their affiliations from plaintiff to Baxter pursuant to their agreement. Finally, plaintiff alleges that defendants were aided by the use of plaintiff's confidential and proprietary information.

### DISCUSSION

### I. Standard for a Motion to Dismiss

In ruling on a motion to dismiss, the court considers "whether relief is possible under

any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Travel All Over the World, Inc.*, 73 F.3d at 1429 (7th Cir.1996); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir.1993). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990).

■ Generally, for purposes of a motion to dismiss, the court accepts all factual allegations as true and draws all inferences in favor of the plaintiff. *Travel All Over the World*, 73 F.3d at 1428. If, however, certain allegations are inconsistent with the terms of a written document that is attached to or otherwise considered part of the complaint, the inconsistent allegations are not accepted as true, and the terms of the written document, fairly construed, prevail. *Perkins v. Silverstein*, 939 F.2d 463, 469 n. 4 (7th Cir. 1991).

## II. Breach of Fiduciary and Contractual Obligations

In Count I, plaintiff alleges that Golden breached fiduciary and contractual obligations that he owed to plaintiff, both during and after his employment, when he: (1) solicited plaintiff's employees and clients to terminate their business relationships with plaintiff; and (2) misappropriated confidential information about plaintiff, and plaintiff's employees and clients, for the benefit of Baxter and himself. Because contractual and fiduciary duties are not synonymous, the court will discuss the validity of each of plaintiff's claims in Count I separately.

■ To state a cause of action for a breach of a fiduciary relationship, a plaintiff must allege that the defendant owed a fiduciary duty to the plaintiff, and that duty must exist as a matter of law. *See Mid–America Natl. Bank of Chicago v. First Savings and Loan Assoc. of South Holland*, 161 Ill.App.3d 531, 113 Ill.Dec. 367, 515 N.E.2d 176, 181

(Ill.App.1987). It is well-settled under Illinois law that an employee owes a duty of fidelity and loyalty to his employer. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 62 Ill.App.3d 671, 20 Ill.Dec. 160, 379 N.E.2d 1228, 1237 (Ill.App. 1978). Accordingly, a fiduciary cannot act inconsistently with his agency or trust by soliciting his employer's customers for himself, or enticing coworkers away from his employer. *Id.* An employee's duties of fidelity and loyalty cease, however, once the employment relationship ends. *Prudential Ins. Co. of Am. v. Van Matre*, 158 Ill.App.3d 298, 110 Ill.Dec. 563, 511 N.E.2d 740, 748 (Ill.App. 1987).

■■ To the extent that plaintiff's claim of breach of fiduciary duties is based on activities that Golden performed while he was employed by plaintiff, Count I states a claim. While employed by plaintiff, Golden was obliged to act in his employer's best interest, and not to perform activities which would be detrimental to that interest. To the extent, however, that plaintiff's claim of breach of fiduciary duties is based on activities that Golden performed after the cessation of his employment with plaintiff, Count I is dismissed. As stated above, under Illinois common law, a fiduciary relationship ends when the employment relationship ends. Because Golden owed no fiduciary duties to plaintiff after his resignation, which was effective on November 18, 1997, his actions after that date cannot constitute a breach.

■ Plaintiff also alleges in Count I that Golden breached contractual duties owed to plaintiff. To state a claim for breach of contract under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) its own performance under the terms of the contract; (3) a breach of the contract by the defendant; and (4) an injury suffered as the result of the defendant's breach. *Petri v. Gatlin*, 997 F.Supp. 956, 963–64 (N.D.Ill.1997). Plaintiff has not identified any contract that it had with Golden requiring him to refrain from soliciting plaintiff's employees and clients. Thus, Count I fails to state a claim for breach of contract with respect to these activities.

■ Plaintiff has also alleged that pursuant to written agreements with plaintiff, Golden had a contractual duty not to make improper use of plaintiff's proprietary and confidential information during or after his employment with plaintiff. Plaintiff has referred to two possible contracts in the complaint: (1) Golden's Acknowledgment of the terms of plaintiff's Employee Handbook; and (2) the Confidentiality Agreement. Plaintiff concedes, however, in its Memorandum in Opposition to Golden's Motion to Dismiss, that neither one of these documents, standing alone, constitutes a valid contract. Instead, plaintiff argues that Golden's contractual duties arose from plaintiff's at-will employment relationship with Golden and that these documents merely "strengthen and reaffirm" Golden's duty to not disclose confidential information. To the extent such a duty arises merely from the employment relationship, the duty is a fiduciary duty, which has already been discussed. For a contractual duty to arise, there must have been a contract. But plaintiff has conceded that the written documents are not contracts, and has not alleged that there was any oral contract between the parties. Therefore, Count I does not state a claim for breach of contract.

Count I is dismissed to the extent that it contains a claim for breach of fiduciary duties based on Golden's actions after the cessation of his employment with plaintiff, and to the extent that it contains a claim for breach of contract. Count I remains viable to the extent it contains a claim for breach of fiduciary duties based on Golden's actions before the cessation of his employment.

### III. Conspiracy to Commit Breaches of Contractual and Fiduciary Duties

■ In Count II, plaintiff attempts to state a claim against defendants for conspiring to have Golden breach the fiduciary and contractual duties he allegedly owed to plaintiff. To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between at least two people for the purpose of accomplishing some unlawful purpose or some lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement. *Faith Freight Forwarding Corp. v. Ruiz,* 1997 WL 159207, at *5 (N.D.Ill. March, 24, 1997). Additionally, a plaintiff must allege not only an agreement, but some factual allegations suggesting a "meeting of the minds." *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1580 (7th Cir.1991).

Plaintiff alleges that defendants entered into an agreement, either formal or informal, in which Golden agreed to: (1) unlawfully solicit plaintiff's employees to terminate their employment with plaintiff; (2) unlawfully solicit plaintiff's clients to terminate their contractual relationships with plaintiff; and (3) use and disclose confidential information related to clients and employees of plaintiff to plaintiff's detriment, and to the benefit of Baxter and Golden. Plaintiff has thus stated both elements of a conspiracy: an agreement to perform an unlawful act, and several underlying unlawful acts.

■ Defendants argue that Count II is deficient because plaintiff has failed to allege facts from which a conspiracy may be inferred. Plaintiff, however, has alleged such facts. For example, plaintiff has submitted the October 30, 1997 letter, written by John Smith of Smith Engineering, and addressed to Golden and other employees of plaintiff. The letter makes it clear that Golden was involved in negotiations with at least one of plaintiff's competitors to divert plaintiff's clients and employees while Golden was still employed by plaintiff. In addition, the resignation dates of Golden, Beaber, and DeBennette, as well as the almost immediate transfer of business to Baxter, appear to be more than coincidental. These facts would allow the trier of fact to draw a reasonable inference that Golden and Baxter came to an agreement regarding plaintiff's employees and clients.

■ Golden further argues that plaintiff has not identified the "act" committed by Golden in furtherance of the conspiracy. On the contrary, plaintiff has identified several unlawful acts, including the solicitation of plaintiff's clients and employees while he was employed by plaintiff, and the misappropriation of confidential information. Therefore, Count II states a claim for conspiracy, to the

extent that it is based on Golden's breach of fiduciary duties.

■ Plaintiff has, however, characterized the alleged conspiracy in Count II not only as a conspiracy to commit breach of Golden's fiduciary duties, but also as a conspiracy to breach his contractual duties. As discussed above, plaintiff has failed to adequately allege the basis for any contractual duty. As such, plaintiff cannot state a claim for conspiracy to commit breach of contract. To the extent that Count II is based on such a theory, it is dismissed.

## IV. Tortious Interference with Business Relationship or Expectancy with Employees

■ In Count III, plaintiff attempts to state a claim against defendants for tortious interference with its employment relationships with Beaber and DeBennette. Plaintiff attempts to state a claim under two theories: (1) tortious interference with contract; and (2) tortious interference with prospective economic advantage. The court will discuss each in turn.

■ Under Illinois law, the elements of tortious interference with contract are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other; and (4) damages. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir.1992). Inducement of the cancellation of an at-will contract, at most, constitutes interference with a prospective economic advantage, not interference with contractual relations. *Prudential Ins. Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir.1985). Because Beaber and DeBennette were both at-will employees of plaintiff, plaintiff cannot state a claim for tortious interference with contract based on any interference with these employees. To the extent that Count III is based on this theory, it is dismissed.

■ Plaintiff also attempts to state a claim for tortious interference with prospec-

tive economic advantage based on defendants' actions in inducing Beaber and De-Bennette to leave plaintiff and join Baxter. The elements of this tort are: (1) a reasonable expectation by the plaintiff of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate interest from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (Ill. 1991). "Purposeful interference" means that the defendant has committed some impropriety in interfering with the expectancy, and is an element that the plaintiff must plead and prove. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 371 (Ill.1998). A plaintiff will generally not have a cause of action for interference with a prospective business relationship against a bona fide competitor unless the circumstances indicate unfair competition. *A–Abart Elec.*, 956 F.2d at 1404–05. Illinois courts have adopted the formulation of the Restatement (Second) of Torts, § 768 (1979) in defining unlawful competition. *Id.* at 1405. Under that formulation,

> (1) [o]ne who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor... does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue in an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other. *Id.*

In the instant case, neither defendant disputes that plaintiff has adequately pled the first, second, and fourth elements of tortious interference with prospective economic advantage. Golden contends, however, that plaintiff has not adequately alleged the third element, that Golden's conduct was unjustified. Plaintiff, however, specifically alleges, "To the extent that they have committed

any of the wrongful actions described in the allegations above, Golden and Baxter have improperly interfered with such business relationships or expectancies by inducing or causing a disruption or termination of Dames & Moore's business relationships or expectancies with its employees and clients." Plaintiff has alleged several wrongful acts, including Golden's solicitation of plaintiff's clients and employees while he was employed, Golden's misappropriation of confidential information about the clients and employees, defendants' conspiratorial agreement to have Golden perform these acts, and Baxter's use of misappropriated confidential information. Plaintiff, therefore, has sufficiently alleged that defendants' actions were unjustified.

■ Baxter argues that, as a matter of law, a corporation does not interfere with a prospective economic advantage when it solicits the at-will employees of a rival. Although Baxter cites *Radiac Abrasives, Inc. v. Diamond Technology, Inc.,* 177 Ill.App.3d 628, 126 Ill.Dec. 743, 532 N.E.2d 428, 431 (Ill.App.1988), to support this statement, the case does not stand for such a broad proposition. The court in *Radiac Abrasives* merely found that it is permissible for a person to attempt to enter into employment contracts with the at-will employees of that person's former employer after that person has terminated his employment. *Id.* The court also stated that where a defendant decides to go into business for himself and, while still employed by plaintiff, contracts to employ the plaintiff's employees, he is in breach of his duties to the plaintiff. *Id.* Thus, *Radiac Abrasives* adds nothing to what this court has already held. There is no question that a corporation may generally compete for the at-will employees of a rival. But in situations where, as alleged here, that competition involves the use of wrongful means by the defendant corporation, a plaintiff can state a cause of action against the defendant for tortious interference with prospective economic advantage. Count III, therefore, states a claim for tortious interference with prospective economic advantage against the defendants.

## V. Tortious Interference with Business Relationship or Expectancy with Clients

■ In Count IV, plaintiff attempts to state claims for tortious interference with contract and tortious interference with prospective economic advantage against defendants based on plaintiff's loss of business with its clients Round Lake and Grayslake. Plaintiff has alleged that it had contractual relationships with these clients, and has attached exhibits documenting its respective relationships with them. Nevertheless, plaintiff fails to state a claim for tortious interference with contract.

Although Exhibit B indicates that plaintiff did have a municipal services contract with Round Lake, the contract explicitly states that it is terminable by either party at any time for any reason. As stated above, interference with at-will contractual relationships constitute, at most, tortious interference with prospective economic advantage. Accordingly, Count IV fails to state a claim for tortious interference with contract based on the loss of business with Round Lake.

■ Plaintiff has submitted a document entitled "Outstanding Contracts," which lists a series of work orders which plaintiff contends collectively constitute a contract with Grayslake. At best, these work orders constitute distinct contracts. Neither this document, nor plaintiff's allegations, describe any contract creating any general obligation between plaintiff and Grayslake. Moreover, with respect to the outstanding work orders, plaintiff has not alleged that Grayslake breached any of these agreements when it switched its affiliation. On the contrary, Exhibit G indicates that Grayslake continued to use plaintiff's services with respect to at least seven of the outstanding work orders. Therefore, Count IV fails to state a claim for tortious interference with contract based on plaintiff's loss of business with Grayslake.

■ Plaintiff also attempts to state a claim for tortious interference with plaintiff's prospective economic advantage in Count IV. Defendants do not contest that plaintiff has properly alleged the first, second, and fourth elements of this tort. Rather, defendants

contend, as with Count III, that plaintiff has failed to adequately allege that they intentionally and unjustifiably induced plaintiffs' clients to terminate their relationship with plaintiff. Yet, in the complaint, plaintiff alleges that "To the extent that they have committed any of the wrongful actions described in the allegations above, Golden and Baxter have intentionally and improperly interfered with such business relationships or expectancies by inducing or causing a disruption or termination of Dames & Moore's business relationships or expectancies with Grayslake and Round Lake." In addition, plaintiff alleges that Baxter and Golden conspired, while Golden was still employed by plaintiff, to have Golden encourage plaintiff's clients to terminate their relationships with plaintiff and join Baxter. These allegations of breach of fiduciary duties and civil conspiracy are sufficient to allege intentional and unjustified inducement. Thus, Count IV states a claim for tortious interference with prospective economic advantage against defendants.

## VI. Unjust Enrichment

In Count V, plaintiff attempts to state a claim against Baxter for unjust enrichment. The essence of this cause of action is that one party has been unjustly enriched and that it would be unfair to allow the recipient to retain the enrichment. *Firemen's Annuity and Ben. Fund of City of Chicago v. Municipal Employees', Officers', and Officials' Annuity and Ben. Fund of Chicago*, 219 Ill.App.3d 707, 162 Ill.Dec. 189, 579 N.E.2d 1003, 1007 (Ill.App.1991). To state a claim, a plaintiff need only allege that there has been unjust retention of a benefit to the plaintiff's detriment. *Id.* In the instant case, plaintiff has alleged that Baxter was unjustly enriched as a result of its wrongful activities, which were described in the other counts. Plaintiff has therefore stated a claim.

The only argument Baxter makes for the dismissal of Count V is that it is based on the alleged wrongdoing described in other counts, all of which must be dismissed. This argument fails for two reasons. First, an action based on unjust enrichment does not require fault or illegality on the part of the defendant; rather, the essence of the cause of action is that one party is unfairly enriched. *Id.* Second, plaintiff successfully stated claims against Baxter for civil conspiracy and tortious interference with prospective economic advantage in Counts II, III, and IV. Count V, therefore, states a claim for unjust enrichment.

## CONCLUSION

Count I states a claim against Golden for breach of fiduciary duties during his employment, but is dismissed as to its other claims. Count II states a claim for civil conspiracy based on the alleged agreement to have Golden breach his fiduciary duties to plaintiff during his employment, but is dismissed as to its other claims. Count III states a claim for tortious interference with prospective economic advantage based on defendants' interference with plaintiff's employees during Golden's employment, but is dismissed to the extent it is based on tortious interference with contract. Count IV states a claim for tortious interference with prospective economic advantage based on defendants' interference with plaintiff's relationships with Grayslake and Round Lake during Golden's employment, but is dismissed to the extent it is based on tortious interference with contract. Count V states a claim against Baxter for unjust enrichment. Plaintiff is directed to file an amended complaint consistent with this opinion on or before August 27, 1998. Defendants shall respond thereto on or before September 17, 1998, on which date the parties shall file a joint status report in the form prescribed by this court. This matter is set for a report on status on September 23, 1998, at 9:00 a.m.