In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2114

BLYTHE HOLDINGS, INCORPORATED,
*et al.*,

*Plaintiffs-Appellants*,

*v.*

JOHN A. DEANGELIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 5262 — **Robert M. Dow, Jr.**, *Judge.*

ARGUED JANUARY 24, 2014 — DECIDED APRIL 21, 2014

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Blythe Holdings, Incorporated ("Blythe") entered into a contract with Tracy Williams ("Williams") of Flawless Financial to pursue the acquisition of vacant lots on the south side of Chicago. Blythe also contracted with attorney John DeAngelis ("DeAngelis") to assist with the transaction; he submitted an application on behalf of Blythe to the City of Chicago. Before the application process was complete, Blythe

brought suit against DeAngelis and his firm, Brown Udell & Pomerantz, Ltd. ("Brown Udell"), claiming legal malpractice and unjust enrichment. The district court granted summary judgment in favor of DeAngelis and Brown Udell on the legal malpractice claim and granted Brown Udell's motion for summary judgment on the unjust enrichment claim. Blythe now appeals to this court. For the reasons that follow, we affirm.

## I.  BACKGROUND

Stephanie Hill ("Hill") formed the corporation Blythe in order to pursue the acquisition of several hundred vacant lots located in Chicago's 16th Ward. Hill was the sole owner and employee of Blythe.

On October 25, 2005, Blythe entered into a consulting agreement with Williams of Flawless Financial. In this agreement, Williams was to "deliver up to 400 residential building lots to Blythe Holdings, Inc. or assigns for $1 million or $2,500 per lot in a minimum 6-9 months time period." The agreement required Blythe "to pay legal fees for a total of $50,000 to the attorney recommended by Flawless Financial and deliver a retainer fee of $25,000 to begin the process." Williams recommended attorney DeAngelis to assist Blythe with the acquisition of the lots.

Pursuant to this recommendation, Blythe  entered into a representation agreement with DeAngelis, who agreed "to provide legal and consulting services in connection with [Blythe's] acquisition of approximately 400 vacant lots" and "to provide such consultation and advice … as is necessary in connection with fostering the successful conclusion of the

Application [to the City of Chicago]." At the time, DeAngelis was employed as an attorney with Brown Udell. DeAngelis drafted the retainer agreement with Blythe on Brown Udell letterhead, but never informed anyone at Brown Udell of his decision to represent Blythe. On December 1, 2005, Blythe paid DeAngelis a $25,000 retainer fee pursuant to the terms of the agreement. The check was made payable to "John DeAngelis, Esq.," and was deposited by DeAngelis into the "John A. DeAngelis Client Fund Account" at Northern Trust Company. DeAngelis never notified anyone at Brown Udell that he had received a $25,000 check from Blythe and never shared any portion of the fees he received from Blythe with Brown Udell.

On December 15, 2005, Hill wrote to DeAngelis informing him that Blythe would be transferring $270,000 to his Client Fund Account. Blythe directed DeAngelis to distribute the funds in the following manner: "$250,000 to Flawless Financial as final payment for the 100 residential lots provided by the City of Chicago and deeded to Blythe Holdings, Inc., … and $20,000 to Flawless Financial for Consulting Fees." Several Blythe investors then transferred $250,000 to the "John A. DeAngelis Client Fund Account." The next day, DeAngelis transferred $249,978 to an account held in the names of Flawless Financial and Williams. None of the funds transferred to Flawless Financial and Williams were ever used to purchase lots from the City of Chicago on behalf of Blythe.[1]

---

[1] Blythe brought RICO claims against Williams and Flawless Financial in a related action, claiming that Blythe was the victim of a "real estate based scheme to defraud investors." On May 3, 2013, the district court entered a

(continued...)

On May 12, 2006, DeAngelis submitted an Application for Purchase of Redevelopment Project Area Property to the City of Chicago's Department of Planning and Development on behalf of Blythe in an effort to obtain the vacant lots. The application was actually submitted on behalf of Chicago 100, Inc., a second corporation formed by Hill for the express purpose of acquiring the city lots. To simplify matters, we omit mention of Chicago 100, Inc., and refer to Hill's corporations solely as "Blythe" in this opinion. Michelle Nolan ("Nolan"), Project Manager at the Department of Planning and Development, reviewed the application. Though the application contained multiple errors, Nolan stated that none were fatal to Blythe's efforts to acquire the vacant lots.

In mid-May, Stephen Forte, a Blythe investor, contributed an additional $250,000 to Blythe to pursue the acquisition of the city lots. In June, Nolan wrote to Hill, explaining that Blythe still needed to submit several items in order to move forward with its application. Nolan outlined the steps that Blythe needed to take before the application process would be complete, including gaining approvals from the Chicago Development Commission and the City Council. At this point, however, Blythe made no further attempts to move forward with the project, to amend its application, or to pursue the requisite approvals.

On June 23, 2006, DeAngelis wrote to Blythe, stating that he "need[ed] input from [Blythe]" to complete the application, but

---

[1] (...continued)

final default judgment against Flawless Financial and Williams in an amount exceeding $9 million.

he received no response. Blythe asserts that by this point, it lacked the funds necessary to move forward with the application. When asked about the $250,000 that Blythe had obtained from investor Stephen Forte in mid-May, Hill responded that she "[could] not recall" what happened to the funds. Blythe then brought suit against DeAngelis and his former law firm, Brown Udell, claiming legal malpractice by both parties and unjust enrichment on the part of Brown Udell. DeAngelis and Brown Udell moved for summary judgment and the district court found in their favor on all counts. Blythe now appeals.

## II.  DISCUSSION

### A.  Standard of Review

We review a district court's grant of summary judgment *de novo*. *Pagel v. TIN Inc.*, 695 F.3d 622, 624 (7th Cir. 2012). Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. "[T]he nonmoving party must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

### B. Legal Malpractice Claim

Blythe first contends that DeAngelis and Brown Udell committed legal malpractice. To prevail on a legal malpractice claim, a plaintiff must demonstrate: "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that 'but for' the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) damages." *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351 (2000) (quoting *Serafin v. Seith*, 284 Ill. App. 3d 577, 586–87 (1996)). "[N]o malpractice exists unless counsel's negligence has resulted in the loss of the underlying action." *Mihailovich v. Laatsch*, 359 F.3d 892, 905 (7th Cir. 2004) (quoting *Ignaski v. Norbut*, 207 Ill. App. 3d 522, 525 (1995)).

Here, an attorney-client relationship existed between DeAngelis and Blythe and that established a duty on DeAngelis' part. It could be argued that DeAngelis breached his duty to Blythe, since the application he filed to the City of Chicago on Blythe's behalf was riddled with errors. Nevertheless, even if DeAngelis breached his duty to Blythe, Blythe still must prove that but for DeAngelis' negligence, it would have acquired the vacant city lots in order to prevail on its legal malpractice claim.

*Mitchell v. Schain* addressed a similar issue. 332 Ill. App. 3d 618 (2002). In *Mitchell*, the plaintiff retained defendants to represent him in a property dispute. He discharged defendants and retained another attorney, Koukios, to represent him instead; three years later, plaintiff's right to bring his claim

expired. Plaintiff then brought legal malpractice claims against the defendants and Koukios. Defendants moved for summary judgment arguing that because plaintiff's cause of action remained viable when defendants were discharged, they were not the proximate cause of plaintiff's damages as a matter of law. The court granted defendants' motion for summary judgment and plaintiff appealed, contending that, but for defendants' alleged malpractice, he would not have been foreclosed from bringing his claim. The court of appeals affirmed the court's grant of summary judgment in favor of defendants, stating, "[t]here is no question that plaintiff's cause of action was viable, as a matter of law, well after defendants were discharged …. It therefore follows that defendants' alleged negligence did not cause plaintiff's damages, the loss of a viable cause of action." *Id.* at 622.

Here, though the application submitted by DeAngelis to the city on behalf of Blythe contained errors, these errors did not ultimately prevent Blythe from obtaining the vacant city lots, nor did Blythe prove that its ability to obtain the vacant lots was lost. Nolan, Project Manager at the Department of Planning and Development, testified that any errors in the application submitted by DeAngelis were nonfatal, and pointed out that the lots were still available for purchase well after Blythe's application was submitted. Since Blythe's ability to acquire the vacant lots remained legally viable well after any alleged malpractice by DeAngelis, it was Blythe's failure to move forward with the application process, not malpractice on the part of DeAngelis, that doomed Blythe's real estate deal.

In addition, Blythe submitted no evidence to support a finding that it would have successfully completed the

application process and obtained the vacant lots but for DeAngelis' alleged malpractice. Though Blythe asserts that the deposition testimony of Alderman Shirley Coleman ("Coleman") conclusively shows that Blythe would have been successful in obtaining the city lots, we disagree. While Coleman stated that "it appeared to her that Blythe had the ability and financial wherewithal to develop the project" and that she was "willing to do what needed to be done in order to assist Blythe to get its sought development done," Blythe still needed to gain approvals from the Chicago Development Commission as well as the City Council before the application process was complete. The district court specifically addressed Coleman's testimony and found her "speculation … woefully inadequate to prove that [Blythe] would have successfully completed the numerous steps required to acquire the lots." Blythe offered no evidence demonstrating that either the commission or the council would have approved its application; to the contrary, Blythe's owner, Hill, admitted in her deposition testimony that she had "no way of knowing" whether the City of Chicago would have granted Blythe the necessary approvals.

Since Blythe failed to prove that DeAngelis' claimed malpractice foreclosed its ability to obtain the vacant lots or that ultimately it would have been successful in acquiring the property, we affirm the district court's grant of summary judgment in favor of DeAngelis on Blythe's legal malpractice claim.

### C. Supervisory Liability Claim

Blythe also asserts that Brown Udell is liable for legal malpractice pursuant to an agency theory of supervisory liability. Since Blythe failed to prove that DeAngelis committed legal malpractice, its malpractice claim against Brown Udell has no merit.

### D. Unjust Enrichment Claim

Lastly, Blythe contends that the district court erred when it granted summary judgment to Brown Udell on its unjust enrichment claim. Blythe asserts that since DeAngelis entered into a representation agreement with Blythe and accepted a $25,000 retainer fee from Blythe while he was employed as an attorney for Brown Udell, the firm constructively accepted the retainer fee and was unjustly enriched. Blythe now seeks the return of these funds. In response, Brown Udell asserts that since it never received any portion of these funds from DeAngelis, it was never unjustly enriched, and Blythe cannot recover.

Unjust enrichment is a remedy that lies where a "defendant has unjustly retained a benefit to the plaintiff's detriment and … the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Hess v. Kanoski & Associates,* 668 F.3d 446, 455 (7th Cir. 2012) (quoting *A.P. Properties, Inc. v. Rattner,* 960 N.E.2d 618, 621 (Ill. App. Ct. 2011)). "[U]njust enrichment does not seek to compensate a plaintiff for loss or damages suffered but seeks to disgorge a benefit that the defendant unjustly retains. *Cleary v. Philip Morris, Inc.,* 656 F.3d 511, 518 (7th Cir. 2011). "[T]he essence of the cause of action is that one party is

enriched, and it would be unjust for that party to retain the enrichment." *Firemen's Annuity & Benefit Fund of the City of Chicago v. Municipal Employees', Officers', & Officials' Annuity & Benefit Fund in Chicago,* 219 Ill. App. 3d 707, 712 (1991).

Here, the undisputed evidence supports a finding that Brown Udell never received any portion of the funds from DeAngelis. Though DeAngelis received a check for $25,000 from Blythe, this check was made out to "John DeAngelis, Esq.," and was deposited into DeAngelis' personal "Client Fund Account" at Northern Trust Company. No partners at Brown Udell had access to this account or received any portion of these funds. In his deposition, DeAngelis admitted that he never told anyone at Brown Udell about his agreement to represent Blythe, and never shared any portion of the $25,000 he received from Blythe with Brown Udell. Since Brown Udell never received any funds from Blythe, no unjust enrichment occurred.

Even assuming that DeAngelis was acting as an authorized agent of Brown Udell at the time he contracted to represent Blythe, imputing the contract to Brown Udell, Blythe's unjust enrichment claim still fails. A claim for unjust enrichment is "based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.,* 153 Ill. 2d 473, 497 (1992). "Under Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *First Commodity Traders, Inc. v. Heinhold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir. 1985) (citing *LaThrop v. Bell Federal Savings & Loan Ass'n,* 68 Ill. 2d 375, 391 (1977)).

Here, it is undisputed that the retainer agreement signed by DeAngelis and Blythe was a valid and binding contract. Under this contract, DeAngelis agreed "to provide legal and consulting services [to Blythe] in connection with [Blythe's] acquisition of approximately 400 vacant lots" and "to provide such consultation and advice … as is necessary in connection with fostering the successful conclusion of the Application." In return, Blythe agreed to pay DeAngelis $25,000, which it later deposited into DeAngelis' "Client Fund Account."

Since Blythe never challenged the contract's validity, the appropriate remedy was a breach of contract claim; unjust enrichment has no application. We affirm the district court's grant of summary judgment in favor of Brown Udell on this ground as well.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment to defendants DeAngelis and Brown Udell on all counts.